# 12-3755-cv

**IN THE
UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

_____

**VERONICA ALBERT-ROBERTS,**

*Plaintiff-Appellant,*

*-v-*

**GGG CONSTRUCTION, LLC, et al.,**

*Defendants-Appellees.*

_____

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK (ROCHESTER)**

**JOINT APPENDIX**

**VOLUME 2 (PAGES 195-263)**

Scott M. Green, Esq.
*Attorneys for Plaintiff-Appellant*
2590 Brighton-Henrietta Townline Rd.
Rochester, New York 14623
(585) 546-4419 (phone)
(585) 232-1160 (facsimile)
smglbg@aol.com

Joseph A. Gawlowicz, Esq.
BROWN & HUTCHINSON
*Attorneys for Plaintiff-Appellant*
925 Crossroads Building
Two State Street
Rochester, New York 14614
(585) 454-5050 (phone)
(585) 454-5066 (facsimile)
jgawlowicz@brownhutchinson.com

# TABLE OF CONTENTS

## VOLUME 1

### (PAGES 1-194)

Docket Entries í  í  í  í  í  í  í  í  í  í  í  í  í  í  í  í  í  í  í  í  í  í  í  í  í  í  í  í  í  í      A-1

Complaint (Pro Se) filed November 5, 2010í  í  í  í  í  í  í  í  í  í  í  í  í  í  í  í  ..     A-9

Order granting Plaintiffs Motion for Leave to Proceed In Forma Pauperisí  í  í  í  í  ..í     A-17

Notice of Appearance by Scott M. Green, Esq. o/b/o GGG Construction, LLC í  í  í  í  í  ...     A-18

Notice of Appearance by Scott M. Green, Esq. o/b/o Gordon Druckerí  í  í  í  í  í  í  .     A-19

Notice of Appearance by Scott M. Green o/b/o Eileen McFadden í  í  í  í  í  í  í  í  í     A-20

Notice of Appearance by Michael Cobbs, Esq. o/b/o Plaintiff Veronica Albert-Robertsí  í  í     A-21

Answer to Complaint of Gordon Druckerí  í  í  í  í  í  í  í  í  í  í  í  í  í  í  í  í  í     A-23

Answer to Complaint of GGG Construction, LLCí  í  í  í  í  í  í  í  í  í  í  í  í  í  í  ..     A-26

Answer to Complaint of Eileen McFaddení  í  í  í  í  í  í  í  í  í  í  í  í  í  í  í  í  ..     A-29

Notice of Motion for Summary Judgment of Gordon Drucker, GGG Construction, LLC,
Eileen McFadden filed April 30, 2012í  í  í  í  í  í  í  í  í  í  í  í  í  í  í  í  í  í  .     A-32

    Attachment #1 to Notice of Motion for Summary Judgment - Petition of
    Scott M. Green, Esqí  í  í  í  í  í  í  í  í  í  í  í  í  í  í  í  í  í  í  í  í  í  í  ..     A-33

    Exhibit "Aö - Plaintiffs New York State Division of Human
    Rights Complaint filed on or about October 20, 2009í  í  í  í  í  í  í  í  í  í  í  ..     A-49

    Exhibit "B"- Dismissal and Notice of Right to Sue
    dated August 5, 2010í  í  í  í  í  í  í  í  í  í  í  í  í  í  í  í  í  í  í  í  í  í  í  .     A-58

    Exhibit "C"- *Pro Se* Complaint of Plaintiff filed on or about
    November 5, 2010í  í  í  í  í  í  í  í  í  í  í  í  í  í  í  í  í  í  í  í  í  í  ..     A-59

    Exhibit "D"- Defendant GGGs Answer to Plaintiffs Complaintí  í  í  í  í  í  í  .     A-67

i

Exhibit "E"- Defendant Drucker's Answer to Plaintiff's Complaint . . . . . . .   A-70

Exhibit "F"- Defendant McFadden's Answer to Plaintiff's Complaint . . . . . .. .   A-73

Exhibit "G"- Affidavit of Defendant Gordon Drucker sworn to April 25, 2012 . . ...   A-76

Exhibit "H"- Transcript of deposition testimony of Plaintiff Veronica Albert-Roberts
taken on December 22, 2011 and February 27, 2012 . . . . . . . . . . . .   A-79

Exhibit "I"- Transcript of deposition testimony of Defendant Gordon Drucker taken on
December 22, 2011 . . . . . . . . . . . . . . . . . . . . . . . . . . .   A-110

Exhibit "J" - Transcript of deposition testimony of Defendant Eileen McFadden taken
on December 22, 2011 . . . . . . . . . . . . . . . . . . . . . . . ...   A-138

Exhibit "K"- Transcript of deposition testimony of Donald Roberts taken on
February 12, 2012 . . . . . . . . . . . . . . . . . . . . . . . . . ..   A-164

## VOLUME 2

### (PAGES 195-263)

Memorandum in Law of defendants in support of motion for summary judgment . . . . ...   A-195

Affidavit of Veronica Roberts in opposition to motion for summary judgment . . . . . .   A-204

    Exhibit A – Affidavit of Kevin Veaunt . . . . . . . . . . ... . .   A-214

    Exhibit B – Position Statement of Gordon Drucker submitted to the
    New York State Division of Human Rights . . . . . . . . . . . ...   A-215

Memorandum of Law of Plaintiff in opposition to defendants' motion for summary judgment...   A-216

Reply Memorandum of Law filed by Gordon Drucker, GGG Construction, LLC,
Eileen McFadden . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   A-236

Decision and Order of Hon. Michael A. Telesca granting motion for summary judgment
filed August 16, 2011 . . . . . . . . . . . . . . . . . . . . . . . . . .   A-242

Judgment dismissing Complaint with prejudice filed August 17, 2012 . . . . . . . .. .   A-261

Notice of Appeal (with Certificate of Service) . . . . . . . . . . . . . . . . . ..   A-262

**A-195**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

VERONICA ALBERT-ROBERTS,

                **Plaintiff,**

v.

GGG CONSTRUCTION, LLC,
GORDON DRUCKER, and
EILEEN MCFADDEN,

                **Defendants.**

**MEMORANDUM OF
LAW**

**CASE NO. 10-CV-6636T**

    The Defendants, GGG Construction, LLC, Gordon Drucker and Eileen McFadden, by their attorney, Scott M. Green, hereby makes and files the following Memorandum of Law in support of their motion for summary judgment relative to the above-named action.

**<u>STANDARD FOR SUMMARY JUDGMENT</u>**

    A motion for summary judgment should be granted, "forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c) of the Federal Rules of Civil Procedure.

    "Summary judgment will be granted if the record demonstrates that 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'". <u>Ward v. Empire Vision Centers, Inc.</u> 686 F. Supp. 2d 243, 248 (W.D.N.Y. 2010). (Citations omitted.) "When considering a motion for summary judgment, the Court must draw inferences from underlying facts 'in the light most favorable to the party opposing the motion.'" <u>Id.</u> "While courts should be cautious about granting summary judgment in cases where motive, intent or state of mind are at issue, a typical facet of discrimination actions, ' . . . the salutary purposes of summary

judgment – avoiding protracted, expensive and harassing trials – apply no less to discrimination cases than to . . . other areas of litigation.'" (Citations omitted.) Id.

## CAUSES OF ACTION ALLEGED IN COMPLAINT

### A. Title VII of the Civil Rights Act of 1964

Title VII of the Civil Rights Act of 1964 is codified in Title 42, U.S.C., Sections 2000e to 2000e-17. Of relevance to this action is Section 2000e-2(a)(1): "It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

Pursuant to Title 42, U.S.C., Section 2000e(b), the term, "employer means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or proceeding calendar year . . .".

Employment discrimination claims are subject to the burden-shifting analysis first articulated in McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973). First, she must establish a *prima facie* case of discrimination by demonstrating: (1) membership in a protected class; (2) satisfactory job performance; and (3) an adverse employment action, occurring under (4) circumstances giving rise to an inference of discrimination. See Collins v. New York City Transit Authority, 305 F. 3d 113, 118 (2d Cir. 2002). Once the Plaintiff has established a *prima facie* case, the burden shifts to the Defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. The burden then returns to the Plaintiff to supply evidence that the legitimate, nondiscriminatory explanation offered by the Defendant for its conduct is a pretext, and

2

that the conduct was actually the result of discrimination. See <u>Payne v. Brinks, Inc.,</u> 517 F. Supp. 2d 653, 656-57 (W.D.N.Y. 2007).

It appears that the Plaintiff has made a claim of hostile work environment based upon race. "The conduct must be intimidating, hostile, or offensive, with discriminatory intimidation, ridicule, and insult permeating the work place." <u>Gallagher v. Delany</u>, 139 F. 3d 338, 347 (2d Cir. 1998). "It is axiomatic that a plaintiff 'must produce evidence that he was discriminated against because of [his] race.'" <u>Murphy v. Board of Education,</u> 00-CV-6038L (W.D.N.Y., J. Larimer 2003). "In determining whether conduct constitutes a hostile work environment, the Court must take into account the frequency and severity of the discriminatory conduct, whether the conduct is physically threatening or humiliating, and whether the conduct unreasonably interfered with [the plaintiff's] work performance." <u>Ward</u>, 686 F. Supp 3d at 252.

"Title VII is not a 'general civility code.'" <u>Bickerstaff v. Vassar College</u>, 196 F. 3d 435, 452 (2d Cir. 1999). "Although offensive language need not be directed toward a plaintiff in order to contribute to a hostile work environment, . . . a few isolated incidents of 'boorish or offensive use of language, particularly when heard 'second-hand', are generally insufficient to establish a hostile work environment." <u>Payne</u>, 517 F. Supp. at 659.

A claim of retaliation is also analyzed using the <u>McDonnell Douglas</u> burden shifting framework. "On a motion for summary judgment, the plaintiff must first establish a *prima facie* case of retaliation. Once the plaintiff has done so, the burden shifts to the defendant to establish a legitimate, non-retaliatory basis for the complained of action. The burden then returns to plaintiff, who must show that the legitimate, non-retaliatory reason articulated by the defendant is a mere 'pretext', and the retaliation was more likely than not the reason for the complained of action." <u>Ward</u>, at p. 251.

3

occurred under circumstances giving rise to an inference of discrimination. . . . The burden then shifts to the employer 'to rebut the presumption of discrimination by clearly setting forth, through the introduction of admissible evidence, legitimate, independent, and nondiscriminatory reasons to support its employment decision'. In order to nevertheless succeed on her claim, the plaintiff must prove that the legitimate reasons proffered by the defendant were merely a pretext for discrimination by demonstrating both that the stated reasons were false and that discrimination was the real reason." Forrest, at p. 305.

". . . [M]ere personality conflicts must not be mistaken for unlawful discrimination, lest the antidiscrimination laws 'become a general civility code'." Id. at p. 309.

"A racially hostile work environment exists "[w]hen the workplace is permeated, with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Id. at p. 310.

### D.  American with Disabilities Act of 1990

The American with Disabilities Act of 1990 is codified in Title 42 of the United States Code. Title 42, United States Code, Section 12112(a) states, "no covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees. . . .".

### ARGUMENT

### GGG CANNOT BE SUED FOR FEDERAL CIVIL RIGHTS ACTIONS BECAUSE IT IS NOT AN EMPLOYER FOR TITLE VII PURPOSES

Recently, the Supreme Court resolved the issue whether proving a defendant is an "employer" is a jurisdictional requirement or an element of a cause of action. In the past, Courts

**A-199**

like the Southern District's, <u>Guadagno v. Wallack Ader Levithan Associates</u>, 950 F. Supp. 1258 (S.D.N.Y. 1997), dismissed a complaint due to jurisdictional defects when the plaintiff failed to allege that the defendant employed more than fifteen people. "The threshold number of employees for application of Title VII is an element of a Plaintiff's claim for relief, not a jurisdictional issue." <u>Arbaugh v. Y&H Corp.</u>, 546 U.S. 500, 516 (2006). Regardless of the approach, the Plaintiff needs to establish that the Defendant is an employer under Title VII. See <u>Krasner v. Episcopal Diocese of Long Island</u>, 431 F. Supp. 2d 320 (E.D.N.Y. 2006).

The Defendant, GGG, through Drucker's Affidavit, has established that it employs less than fifteen people at the EOB. Plaintiff cannot controvert that fact. Based upon the foregoing, this Court should dismiss the Plaintiff's Federal causes of action against the Defendants.

## INDIVIDUALS CANNOT BE SUED UNDER TITLE VII

There is no individual liability under Title VII or the ADA. See <u>Wrighten v. Glowski</u>, 232 F. 3d 119, 121 (2d Cir. 2000). (Title VII); <u>Tomka v. Seiler</u>, 66 F. 3d 1295, 1313 (2d Cir. 1995); <u>Garcia v. S.U.N.Y Health Services Center</u>, 280 F. 3d 98 (2d Cir. 2001) (ADA); <u>Murphy v. Board of Education</u>, 273 F. Supp. 2d 292 (W.D.N.Y. 2003).

Based upon the above, this Court should dismiss the Federal claims against Gordon Drucker and Eileen McFadden individually.

## ADA CLAIM MUST BE DISMISSED BECAUSE
## PLAINTIFF FAILED TO RAISE THE CLAIM WITH THE EEOC

The Plaintiff alleged racial and color employment discrimination in her complaint with the New York State Division of Human Rights and EEOC. No administrative complaint was brought pursuant to the Americans with Disabilities Act of 1990. Although she had ample time to do so,

6

Plaintiff never amended her complaint. The Plaintiff even admitted that she knew the Defendant intended to outsource her job <u>before</u> she was injured in a car accident.

The ADA claim must be dismissed since Plaintiff failed to exhaust her administrative remedy. Further, the ADA claim is not "reasonably related" to the race claim made in her EEOC complaint. See <u>Payne v. Brinks Inc.</u>, 517 F. Supp. 2d 653, 657 (W.D.N.Y. 2007); <u>Hawkins v. Wegmans Food Market</u>, 2007 U.S. App. LEXUS 12014 at *3 (2d Cir. 2007).

Based upon the foregoing, the Plaintiff's claim under the ADA must be dismissed.

### PLAINTIFF FAILS TO STATE A *PRIMA FACIE* CLAIM OF RACIAL EMPLOYMENT DISCRIMINATION IN EITHER HER STATE OR FEDERAL ACTION

The Plaintiff's employment discrimination claims are based upon her belief that McFadden's complaints about her work performance were racially motivated. Plaintiff also claims that GGG and Drucker did not take adequate action to "rein in" McFadden, and are therefore liable to her. Further, Plaintiff claims that GGG terminated her due to complaints about racial discrimination. Plaintiff's contentions are without merit.

Plaintiff admits that she had little contact with McFadden. No one at GGG, including McFadden, ever directly subjected her to racial epithets. No one at GGG, including McFadden, physically harassed her or prevented her from doing her job. Plaintiff's work hours and salary remained consistent throughout her employment at GGG.

Even the Plaintiff attributed McFadden's actions to non-racial discriminatory reasons. "I truly believe that much of her accusation has to do with her efforts to prove to Mr. Gordon Drucker that he needs her on his payroll. She accomplishes these tasks by complaining about others to make her look good."

The Plaintiff was not present when the racial insult attributed to McFadden was stated to her

husband. The statement was said in the heat of an argument with Mr. Roberts. There is no allegation that McFadden ever uttered such racial epithets to the Plaintiff or her husband again.

GGG, through Drucker, acted appropriately. Drucker conducted an investigation, met with witnesses to the incident and was unable to determine whether the allegations against McFadden were true. Drucker met with the Plaintiff, Mr. Roberts and McFadden. Drucker told McFadden that if he ever heard another allegation related to the use of racially insensitive language, he would fire her.

Several months prior to her termination, GGG decided to outsource their cleaning services. Drucker testified that tenants were unsatisfied with the services provided by the in-house cleaners. GGG solicited three proposals for cleaning services. GGG planned to start out outsourcing cleaning service by the New Year. On October 20, 2008, Plaintiff advised Drucker she could not return to work due to a motor vehicle accident. When Plaintiff advised Drucker she did not know how long she would be out, GGG hired AG Cleaners immediately. Drucker needed to keep the EOB clean. GGG terminated its two part-time cleaners; the Defendant and Michael McFadden, who is white.

Plaintiff cannot reasonably claim that she was terminated because she complained about McFadden. GGG took reasonable steps to resolve the issue concerning a racially insensitive remark. Plaintiff cannot reasonably claim that she was terminated because she filed an EEOC Complaint against GGG. Drucker testified that he did not know about the Complaint until after receipt of the Complaint, which occurred following her termination. Plaintiff wrote in her Complaint that she was aware that the cleaning services were going to be outsourced prior to her termination. This fact also eliminates any ADA claim since she knew her position was going to be outsourced even before her injury even occurred.

Even if Plaintiff met her initial burden, Defendants have provided nondiscriminatory

8

**A-202**

reasons for her termination.   Defendant received tenant complaints regarding cleaning services.

Defendant, who had previously outsourced the EOB cleaning services in the past, decided to obtain

quotes for cleaning services.  It should be noted efforts to obtain new cleaning services preceded the

racial insult incident.  Defendant terminated both of their cleaning employees, one of whom was

white.

Based upon the foregoing, the Plaintiff cannot meet her *prima facie* case of employment

discrimination under either their Federal or State causes of action.  Even if she was able to meet her

initial burden, no evidence exists to overcome Defendants' nondiscriminatory bases to terminate her

employment.  Therefore, these causes of action must be dismissed.

### EVEN IF THE COURT BELIEVED THAT A VIABLE
### STATE CAUSE OF  ACTION EXISTS, THE COURT SHOULD
### DECLINE TO EXERCISE JURISDICTION OVER THE STATE CLAIM.

"It is well settled that 'if the federal claims are dismissed before trial . . . the state claims

should be dismissed as well.'"  Murphy v. Board of Education, quoting United Mine Workers v.

Gibbs, 383 U.S. 715, 726 (1966).

[THIS PORTION OF PAGE INTENTIONALLY BLANK]

**A-203**

## CONCLUSION

Based upon the foregoing, the Defendants respectfully request this Court to dismiss Plaintiff's Complaint in its entirety, pursuant to Rule 56(b) of the Federal Rules of Civil Procedure and Local Rule 56 and grant the Defendants the costs, disbursements and legal fees associated with this action as well as any other and further relief as the Court deems necessary and proper.


Dated: April 30, 2012
      Rochester, New York

                        Respectfully Submitted,


                        s:/Scott M. Green, Esq.
                        *Attorney for Defendants,*
                        *GGG Construction, LLC, Gordon Drucker,*
                        *Eileen McFadden*
                        2590 Brighton Henrietta TL Road
                        Rochester, New York 14623
                        Tel. (585) 546-4419
                        Fax (585) 232-1160
                        Email:  smglbg@aol.com

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

VERONICA ALBERT-ROBERTS,

                                   Plaintiff,            **AFFIDAVIT OF VERONICA ROBERTS**

    v.

GGG CONSTRUCTION, LLC,
GORDON DRUCKER, and                  Case No.: 10-CV-6636T
EILEEN McFADDEN,

                           Defendants.

---

STATE OF NEW YORK ) ss:
COUNTY OF MONROE)

Veronica Roberts being duly sworn deposes and says:

1.    I am the plaintiff in the above captioned action.

2.    I submit this affidavit in opposition to the summary judgment motion of defendants GGG Construction, LLC, Gordon Drucker and Eileen McFadden.

3.    In or around November 2008, I was employed by GGG Construction, LLC, Gordon Drucker and Eileen McFadden as a cleaner.

4.    I was part of a cleaning crew which consisted of Eileen McFadden, Anthony Gibbons and Eileen McFadden's husband, Michael McFadden.

5.    The cleaning crew cleaned the building and offices located at 36 West Main Street, Rochester, NY, known as the "The Executive Office Building."

6.    The building was owned by defendant GGG Construction, LLC, a company owned by defendant Gordon Drucker.

7.    My usual work hours were from approximately 4:45 p.m. to 9:00 p.m. or so.

8.    My duties included, but were not limited to dusting, mopping vacuuming, emptying trash, etc.

9.    At all times that I worked for defendants, I was a fully satisfactory employee.

10.    Tenants of the building often commented on what a good job I did cleaning their offices.

11.    At all times I worked for defendants, Eileen McFadden was the building manager and supervisor of all employees.

12.    All employees took orders and direction from Eileen McFadden.

13.    The owner of the building, Gordon Drucker resides in or around New York City and was only in Rochester once or twice a month and then for only for a few hours.

14.    If tenants, employees or patrons of the building had problems or issues, they would see Eileen McFadden and she had the power and authority to resolve the issues.

15.    During the time I worked for the defendants, Eileen McFadden was my supervisor.

16.    She controlled the cleaning supplies we used to do our job.

17.    Anthony Gibbons was simply the team leader of the cleaning crew not the supervisor.

18.    He took orders from Eileen McFadden and often complained to my husband Donald Roberts about defendant McFadden's treatment of Mr. Gibbons.

19.    Anthony Gibbons had no power to hire, fire, or effect the terms and condition of my employment with defendants.

20.    My husband, Donald Roberts kept me company while I cleaned and did my job.

21.    I worked for defendants from about November 2008 up until the time I was fired on or about October 20, 2009, after my husband and I complained about racial discrimination to defendant Gordon Drucker after defendant Eileen McFadden called my husband and me "niggers."

22.    Eileen McFadden treated my different. I believe because I am a Black.

23.    She would accuse me of stealing garbage bags and cleaning supplies and untruthfully criticizing my cleaning.

24.    Her criticism of my cleaning work was completely unfounded as I was best cleaner of the crew and always did a first rate job in clearing such that the tenants of the building whose offices I cleaned often praised my work.

25.    In addition, Eileen McFadden would make we do more work than my white coworker, Michael McFadden who was also a cleaner and Eileen's husband.

26.    Mr. McFadden did a poor job cleaning but Eileen McFadden never criticized Mr. McFadden's cleaning work even though building tenants often complained about his cleaning work.

27.    For example, he would often forget to clean certain areas he was responsible for or he would do a poor job of cleaning and tenants would complain.

28.    Despite the fact that there were tenant complaints about Mr. McFadden's cleaning, Eileen McFadden never criticized Michael McFadden's work or addressed the issue with him.

29.    Eileen McFadden would also harass me because I am Black, especially after I complained about her conduct.

30.    I believe she even employed her husband, Michael McFadden to harass me and make my job more difficult.

31.    In particular, defendant Mr. McFadden would poor an excessive amount of bleach down the drains in the bathroom sinks, urinals and toilets to the point where the fumes were toxic and it made it difficult and sometimes impossible to clean the bathrooms without risking my health and safety.

32.    I believe Mr. McFadden did this to harass me and my husband.

33.    I am a cleaner and I know that it does not take the amount bleach Mr. McFadden used to clean and disinfect a sink, toilet or urinal.

34.    Mr. McFadden would also come on to the floors that I cleaned and harass my husband and at one point he even pulled a pocket knife on my husband.

35.    We told Mr. Drucker about the knife incident, but defendant Drucker did nothing to address the situation.

36.    In September 2009, an incident occurred outside of Vito's Cigars in the building in which Eileen McFadden called my husband Donald Roberts and me "niggers."

37.    Although, I was not present during the incident, my husband told me about the incident the same day it occurred.

38.    My husband told me that defendant Eileen McFadden confronted him in Vito's Cigars regarding the upcoming Labor Day holiday work schedule.

39.    When my husband advised Eileen McFadden that I was not working the holiday, Eileen McFadden went berserk and stated "you fucking people need to do your job, Fucking niggers…" or words to that effect.

40.    Although I was not present during Eileen McFadden's tirade, I believe Mrs. McFadden was referring to me and my husband when she uttered the words "you…people" and "niggers."

41.    I was offended, hurt, embarrassed, distraught, and even ashamed that she would use racial epithets against me and my husband, especially where she did so in the hallway of of the building for all to hear, including tenants, security personnel, and patrons of the building.

42.    It does not make me feel any better or different that I was not present when Eileen McFadden uttered the racial epithets or that she did not say it to my face.

43.    It is the fact that she uttered such racially charged and derogatory words in the work place. I do believe she was referring specifically to me and my husband as the context of the utterance was that she was talking to my husband about me and my husband's work schedule during the upcoming holiday.

44.    Based on the context, it is clear that she was referring to me and my husband.

45.    Even if the utterance were directed at someone other than my husband and me, it would not change my feelings of disgust, distress, embarrassment and offense.

46.    Eileen McFadden's use of the racial epithet confirmed my suspicions that she holds racial bias against Blacks.

47.    The incident wherein Eileen used the racial epithet quickly spread through the building.

48.    The talk around the building about the incident and defendant McFadden's use of racial epithets made me uncomfortable, embarrassed and distraught.

49.    Eileen McFadden's actions in using the racial epithets helped me put in perspective why she treated me different from my White co-worker Michael McFadden by

5

making untrue allegations that I was stealing garbage bags and cleaning supplies and criticizing my cleaning work even though the tenants actually complained about Michael McFadden's cleaning work, not mine.

50.    My cleaning work was impeccable.

51.    I understand that Mrs. McFadden denied at her deposition that she ever uttered the word "nigger," however, the building engineer Kevin Veaunt, who is white, heard Mrs. McFadden say "all you people think you get special fucking treatment, just do your fucking job. All you fuck niggers." See the sworn statement of Kevin Veaunt sworn to October 28, 2009 attached hereto as Exhibit A.

52.    To add insult to injury defendant Gordon Drucker did nothing to remedy the hostile work environment after my husband and I complained about Eileen McFadden using a racial epithets in the work place.

53.    In particular, my husband and I complained about McFadden's conduct in September 2009 and less than a month later Gordon Drucker fired me on October 20, 2009.

54.    In fact, it took Mr. Drucker a long time to even return our phone calls so we could talk about the September 2009 incident.

55.    For the month between the time when we complained to Drucker about Eileen McFadden's use of racial epithets, Mr. Drucker refused to act and remedy the hostile work environment.

56.    I know this because after we complained, Eileen McFadden snickered at my husband and would purposefully place herself in my husband's path to start trouble.

57.    My Husband and I owned a business, Roberts Home Décor located in the building.

6

58.   My husband was at our business all day long while I was at my primary job at Strong hospital.

59.   During the day while my husband was running our business, Eileen McFadden would follow my husband around and harass him.

60.   After we complained about discrimination, McFadden retaliated against us by telling tenants and patrons in the building not to come to, or shop at our business.

61.   We complained about this as well to Drucker and he did nothing, even though he was our landlord and we paid monthly rent to him.

62.   Apparently, Mr. Drucker did not do anything to discipline McFadden or make her stop harassing my husband and me or stop her from telling tenants and building patrons not to shop at out business.

63.   Mr. Drucker's inaction in response to our complaints of a hostile work environment is not surprising as apparently he too uses offensive slurs to refer to Blacks.

64.   Mr. Drucker himself refers to Blacks as "colored." (See the New York State Human Rights ("NYSDHR") position statement submitted to the NYSDHR by Gordon Drucker attached hereto as Exhibit B; also see Drucker Depo. pgs. 61-63).

65.   Kevin Veaunt called Mr. Drucker the same day the incident happened.

66.   My husband and I called Mr. Drucker for over a week about the incident and he never returned our calls.

67.   We then called Mr. Drucker's partner Gary (last name unknown) and complained.

68.   Significantly, when we advised Gary about Eileen McFadden's use of racial epithets, Gary responded that this was not the first time that Eileen McFadden had said something "in that neck of the woods."

69.    Presumably Mr. Drucker was also aware of Eileen McFadden's prior inappropriate actions and therefore should have taken remedial action.

70.    After we called Gary and complained, Mr. Drucker finally agreed to meet with us when he was in town and there was a meeting in or around the last week of September 2009 where we complained about McFadden's use of racial epithets.

71.    Defendant Drucker fired me on October 20, 2009, less than a month after the above referenced meeting wherein we complained about discrimination.

72.    I filed a charge of discrimination with the New York State Division of Human Rights shortly after Eileen McFadden used the racial epithets against my husband and me.

73.    In response, Mr. Drucker referred to my husband and me as being "colored."

74.    Mr. Drucker was ok with Blacks working for him as long as they didn't complaint about racial discrimination.

75.    Mr. Drucker did not take my husband and my complaints of racial discrimination seriously and Eileen McFadden was never disciplined.

76.    Mr. Drucker's solution to the problem of discrimination in the the work place was to fire the person complaining about discrimination.

77.    On October 20, 2009, Mr. Drucker terminated my employment, the day after I was involved in a motor vehicle accident and was unable to come to work and less than a month after my husband and I complained about discrimination and after I had filed a charge of discrimination against him and McFadden with the New York State Division of Human Rights.

78.    Mr. Drucker claims that he fired everyone because he wanted new faces to clean the building.

79.    However, this is simply pretext as the only person who was terminated was me.

8

**A-212**

80.    After I was terminated, Eileen McFadden, Anthony Gibbons and Michael McFadden continued to clean the building.

81.    Mr. Drucker's alleged outsourcing of cleaning was pretextual and done to cover up his retaliatory firing of me.

82.    His answer to my complaint of discrimination and Eileen McFadden's racist conduct was to get rid of me.

83.    The day after I was involved in and motor vehicle accident on October 19, 2012, Drucker fired me.

84.    He did not wait until I could get an update on my medical condition or determine how long I would be out of work.

85.    I anticipated returning to work after a day or two.

86.    I was shaken up after the accident and needed a day to rest and assess my injuries.

87.    Mr. Drucker claims that he decided to outsource the cleaning to get a better product, however, he outsourced the cleaning to Anthony Gibbons who was one of the cleaners in the first place along with me, my husband Donald Roberts, Eileen McFadden and her husband, Michael McFadden.

88.    After my husband and I found out that Drucker was going to outsource cleaning to Anthony Gibbons, we went to Gibbons and asked for a job with Gibbons.

89.    Gibbons told us that he would hire us because he liked our work, but he could not hire us because Drucker told him not to hire us.

90.    I do not understand why Drucker would care who Gibbons hires as part of his cleaning company as long as Gibbons can perform the clearing contract between Drucker and Gibbons.

**A-213**

91.    I believe Drucker told Gibbons not to hire me and my husband in retaliation of my complaint about Eileen McFadden racially offensive statements.

92.    In light of the foregoing, I respectfully request that the Court deny defendants' motion in its entirety.


s/ Veronica Roberts
_____
Veronica Roberts


Sworn to before me this 27th day of June 2012


s/ Michael Cobbs_____
Notary Public
Michael Cobbs
Notary Public, State of New York
#6004548 Wayne County
Commission Expires March 23, 2014

10

**A-214**

**KEVIN VEAUNT**

1343 LAKE AVENUE • ROCHESTER NY 14613 • (585)-455-4390

October 28, 2009

To Whom It May Concern:

Per your request, here is my written statement and recollection of the events and conversation that took place on September 4, 2009.

*I came into work and Deloris told me to go look at the back alley because it was trashed. When I saw how bad it was I asked who was out there because we have a sign out key for the dumpster.*

*Eileen came down and got involved in the conversation and stated that Donny and his wife were the last ones to go out there.*

*When I came back in from dumping trash I overheard Donny asking Eileen why she did not get along with him and his wife? Then Donny said that he did not think him and his wife were not going to be in because it was a holiday weekend.*

*Eileen then said, "Me and my husband are not going to get stuck doing your work. All you people think you get special fucking treatment. Just do your fucking job. All you fucking niggers."*

*Donny responded back to her, "If your going to call me that, it's negro not nigger."*

If you have any questions or require further info0rmation please feel free to call me at the number listed above.

Sincerely,

Kevin Veaunt

Sworn to before me this
28th day of October, 2009.

CAROL L.H. PLOPPERT
Notary Public in the State of New York
Monroe County
Commission Expires Nov. 30, 20 09

Case # 10137273

Veronica Roberts's v GGG Construction LLC

Response to complaint alleging unlawful discriminatory practice.

There are four (4) people employed part time to clean the Executive Office Building. The hours of employment are 5pm through 9pm Monday through Friday.

The employees are Anthony, Mike, Donald and Veronica. Anthony, Donald and Veronica are colored, Mike is white. Anthony is the night supervisor. Anthony reports to Eileen who is white and works during the day. Each employee is assigned a specific area of the building that they are responsible to clean. Eileen is the contact between our clients and the cleaners. If a problem is reported or she finds an issue related to the cleaners she communicates with Anthony.

Veronica and Donald are assigned various tasks such as dusting, vacuuming and garbage removal. To complete these tasks they are given various supplies. The supplies consist of cleaning supplies, plastic garbage bags, vacuum, large garbage can etc. They are the last employees in the evening on each floor and must make sure that their areas are clean.

On a daily basis certain things need to be addressed. Anytime a tenant requests additional services or Eileen finds an issue these requests are forwarded to the specific cleaner who cleans this tenant area. These additional tasks are part of the job of cleaning. They are not requests that have to do with anything else.

It is Eileen's job to control costs. If she finds that we are using more supplies then usual she will talk to the cleaning staff to find out why. At no point was anyone accused of theft.

It was brought to my attention by Donald Roberts that Eileen called him a "Nigger". I sat them down together in my office. Eileen denied these accusations. I informed both of them that hurtful words would not be tolerated and if it happens again the employee will be terminated.

In summation there is no way that any employee has ever been or will ever be discriminated against. Every employee is expected to perform their job, show up on time and be able to carry out their job responsibilities. At no point in their employment has anyone threatened to fire them.

Since this complaint was filed Donald has resigned do to a medical issue and Veronica has been unable to work due to medical issues.

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

VERONICA ALBERT-ROBERTS,

                                  **Plaintiff,**

              **v.**

GGG CONSTRUCTION, LLC,
GORDON DRUCKER, and
EILEEN McFADDEN,

                        **Defendants.**

**MEMORANDUM OF LAW
IN OPPOSITION TO
DEFENDANTS' MOTION
FOR SUMMARY
JUDGMENT**

**Case No.: 10-CV-6636T**

### PRELIMINARY STATEMENT

Plaintiff, Veronica Albert-Roberts (hereinafter "plaintiff") by and through her attorneys Brown and Hutchinson, Michael Cobbs, Esq., *Of Counsel*, hereby submits the following Memorandum of Law in opposition to the motion for summary judgment made by the defendants.

Plaintiff seeks redress for discrimination based upon race, color and retaliation suffered in her capacity as an African American female employee of the defendant, GGG Construction, LLC, where defendant McFadden used racial epithets in the work place and plaintiff, after one year of satisfactory performance was fired based on pretextual reasons on October 20, 2009, after her and her husband complained about discrimination. Defendants Gordon Drucker (hereinafter "Drucker") and Eileen McFadden (hereinafter "McFadden") are each named as defendants, individually and in their official capacities

as plaintiff's supervisors and the persons directly responsible for the discrimination and retaliation against plaintiff.

## PROCEDURAL HISTORY

Plaintiff commenced this action *pro se* against defendants GGG Construction, LLC, Gordon Drucker and Eileen McFadden (hereinafter "defendants") with the filling of a Complaint in this Court on January 5, 2010, alleging that defendants violated Title VII of the Civil Rights Act of 1964, as codified, 42. U.S.C. §2000e et seq., New York State Human Rights Law §§290 through 297 and 42 U.S.C. §1981 on account of race, color and retaliation. Michael Cobbs. Esq. filed a Notice of Appearance on June 16, 2010 after being retained to represent plaintiff.

Plaintiff's deposition was taken on December 22, 2011 and continued on February 27, 2012. The deposition of the owner of GGG Construction, Gordon Drucker was taken on December 22, 2011. The deposition of non party witness Donald Roberts was taken on February 27, 2012 and the deposition of plaintiff's direct supervisor, Eileen McFadden was taken on December 22, 2011. Copies of the deposition transcripts of the above witnesses are all attached to the defendants' motion papers as Exhibits H, I, J, and K respectively.

Defendants now move for summary judgment. However, as discussed below, genuine and material questions of fact and issues of credibility exist which must be determined by the trier of fact. Therefore, defendants' motion for summary judgment must be denied and plaintiff respectfully requests that the Court deny same.

## STATEMENT OF FACTS

Plaintiff respectfully refers the Court to the body of this Memorandum and the Affidavit of Veronica Albert-Roberts, sworn to on June 27, 2012 submitted herewith for the facts relied upon by the plaintiff.

## SUMMARY JUDGMENT STANDARD

Defendants' motion for summary judgment must be denied based upon the questions of fact and issues of credibility which exist in the present case. The court may grant summary judgment only where the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Federal Rule of Civil Procedure 56(a). The burden is on the moving party to establish the absence of any material factual issues. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Summary judgment can be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his [her] claim that would entitle him [her] to relief." Rhey v. Uhry, 354 Fed. Appx., 469, 470 (2d. Cir. 2009).

In deciding whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party. Augustine v. Kim Kye Hee, 161 Fed. Appx. 77, 78 (2d. Cir. 2005). Furthermore, in discrimination cases, where state of mind is at issue, courts will grant summary judgment sparingly, "because careful scrutiny of the factual allegations may reveal circumstantial evidence to support the required inference of discrimination." Cooper v. Connecticut Public Defenders Office, 280 Fed. Appx. 24 (2d. Cir. 2008); (quoting Mandell v. County of Suffolk, 316 F.3d 368, 377 (2d. Cir. 2003).

- 3 -

## POINT I

### PLAINTIFF HAS ESTABLISHED A PRIMA FACIE HOSTILE WORK ENVIRONMENT CASE

The plaintiff has plead a prima facie case of a hostile work environment at GGG Construction.  To state a hostile work environment claim in violation of Title VII, a plaintiff must plead facts that would tend to show that the complained of conduct: (1) "is objectively severe or pervasive, that is the conduct creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment based on race.  Gregory v. Daly, 243 F.3d 687, 691-92 (2d. Cir. 2001).

### A.    Subjective Analysis

When examining the objective aspect of the hostile work environment, the court does not examine it through the eyes of a reasonable African American, but instead looks at the conduct through the eyes of the person who is the target of the racially oriented remarks.  Richardson v. New York State Department of Correctional Service, 180 F.3d 426, 436 (2d. Cir. 1999).  It is the perspective of the person Title VII seeks to protect that is crucial, not the perspective of the speaker.  Richardson, 180 F.3d at 436.  Although isolated minor episodes of harassment do not merit relief under Title VII, even a single episode of harassment, if severe enough can establish a hostile work environment.  Id. at 437.  No single act can more quickly alter the conditions of employment and create an abusive working environment than the use of an unambiguous racial epithet such as 'nigger' by a supervisor.  LaGrand v. Descresente Distributing Co., Inc., 370 Fed. Appx. 206, 208 (2d. Cir. 2010).

In the present case, the allegations set forth by plaintiff involve such a racially charged epithet, the utterance of which alone creates a question of fact that should be left to the fact finder.  It is clear that the plaintiff subjectively felt she was subjected to a hostile work environment.  The existence of a hostile work environment based upon race involves the application of facts to law, which creates a mixed question of law and fact because it involves the application of a legal standard to a particular set of facts.  Such mixed questions are "especially well suited for jury determination and summary judgment may be granted only when reasonable minds could not differ on the issue." Richardson, 180 F.3d at 437.

In the present case, defendant McFadden stated, **"You fucking niggers don't want to do--- you all just have to do the job you've been fucking paid for. I can't stand you fucking niggers."**  (Deposition of Donald Roberts, pg. 67, lines 19-24.) Furthermore, defendant McFadden pluralized the racial epithet meaning she was directing her comment at more than just Mr. Donald Roberts.  Deposition of Donald Roberts at pages 67-68.  As the n-word is one of the most racially charged, historically significant and hurtful racial epithets used towards African Americans, any rational jury could understand through the eyes of another African American why this would create a hostile work environment.  This coupled with the constant accusations of stealing cleaning supplies would lead any reasonable person to feel discriminated against based upon his or her race.

Mr. Drucker claimed at deposition that he investigated the Roberts' complaint of discrimination by talking with several individuals at the building, including Kevin Veaunt. (Drucker Depo. pg.24, lines 16-23). The affidavit of Kevin Veaunt is attached to

**A-221**

the Affidavit of Veronica Roberts as Exhibit A in which he swears that he heard Eileen McFadden use of the racial epithet "niggers." Defendant Drucker admitted that Mr. Veaunt did tell Drucker that he heard McFadden use the racial epithet at issue here.

Despite Mr. Veaunt advising Drucker that defendant McFadden did in fact use the racial epithet, Mr. Drucker testified at deposition that his investigation was inconclusive and he did not determine whether in fact McFadden did use the racial epithet. (Drucker Depo. Pg. 25, lines 1-25). While defendant McFadden denies that she used the epithet, Mr. Veaunt, who is white, heard her use the epithet.

At deposition, Drucker testified that in a meeting with McFadden and plaintiff's husband regarding the racial epithet incident, "I informed both of them that hurtful words would not be tolerated, and if it happens again, the employee would be fired." The statement is puzzling since the meeting was about McFadden's use of the hurtful racial epithet. Her conduct was under review not that of the Roberts, yet Drucker directed his warning of firing to Mr. Roberts as well instead of solely to McFadden.

Defendant McFadden would do things to prevent plaintiff from being able to perform her job like moving garbage bags, mops and other things. (Donald Roberts Deposition pg. 34, lines 16-25; pg. 35, lines 4-10). She also implied that plaintiff was stealing garbage bags. (Donald Roberts Deposition pg. 35, line 25 through pg. 36, lines 1-25). At one point, McFadden removed all of the garbage bags such that plaintiff could not do her job and plaintiff had to seek the intervention of Mr. Drucker to get garbage bags to do her job. (Donald Roberts Deposition pg. 43, line 25 through pg. 44, lines 1-14).

On another occasion defendant McFadden implied that plaintiff stole a tenant's iPod which the tenant ultimately found in his jacket pocket at his home. (Donald Roberts Deposition pg. 45, lines 9-25 through pg. 48, lines 1-25).

McFadden's conduct of implying that plaintiff was stealing put plaintiff's job in jeopardy as defendant Drucker stated to plaintiff's husband that he does not write people up, he fires them. (Donald Roberts Deposition pg. 52, lines 22-25 through pg. 53, lines 1-12).

Defendants' counsel, who was once a tenant of the building even expressed concern about McFadden's use of racial slurs. (Donald Roberts Deposition pg. 54, lines 12-25). Defendant Drucker's business partner in GGG Construction, LLC commented to plaintiff's husband that the incident in which McFadden used the racial slur was not the first time McFadden had said something "in that neck of the woods" and further commented that he did not know why Drucker "kept her around." (Donald Roberts Deposition pg. 56, lines 1-12).

After the racial slur incident, defendant Eileen McFadden's husband pulled a pocket knife on plaintiff's husband and stated "hey, you better be glad that it was my wife because I'd have did more than called you what she said to you." (Donald Roberts Deposition pg. 57, lines 9-25). Defendant Eileen McFadden also referred to Blacks as "them people." (Donald Roberts Deposition pg. 70, lines 1-25).

Based on the above facts and circumstances, clearly material questions of fact and issues of credibility exist as to whether plaintiff was subjected to a hostile work environment. Therefore, defendants' motion must be denied.

**B.**    **Plaintiff does not have to be present when racial slurs are uttered.**

Defendants' argue that the racial epithet occurred outside the presence of plaintiff. Significantly, the racial epithet was about and concerned plaintiff and her husband. However, this is not dispositive of the plaintiff's claims. A racial epithet need not be directed at a plaintiff in order to contribute to a hostile work environment. Schwapp v. Town of Avon, 118 F.3d 106, 111 (2d. Cir. 1997). Furthermore, the fact that a plaintiff learns second hand of a racially charged comment or joke by a fellow employee or supervisor also can impact the work environment. Schwapp, 118 F.3d at 111. In Schwapp, that comments made outside the presence of Mr. Schwapp were relevant and could not be ignored on summary judgment. Id. The court stated that the alleged racial comments and incidents made outside the presence of the plaintiff were significant in determining whether the incidents he did experience would reasonably be perceived as hostile or abusive. Id.

## POINT II

### PLAINTIFF HAS ESTABLISHED A PRIMA FACIE CASE OF RETALIATION WHERE IT IS INDISPUTABLE THAT SHE WAS FIRED WITHIN ONE (1) MONTH AFTER SHE COMPLAINED ABOUT DEFENDANT MCFADDEN'S USE OF RACIAL EPITHETS

Plaintiff was retaliated against when she was fired for pretextual reasons within one month after complaining about the hostile work environment. In order to establish a prima facie case of retaliation, the plaintiff must show: (1) she engaged in a protected activity; (2) her employer was aware of that protected activity; (3) there was an adverse employment action disadvantaging plaintiff; and (4) a causal connection between the

protection activity and the adverse employment action. <u>Richards-Byers v. New York City of Dept. of Finance</u>, 449 Fed. Appx. 55, 56 (2d. Cir. 2011). Claims of retaliation are analyzed under the <u>McDonnell Douglas</u> burden-shifting framework. Once plaintiff makes a showing of retaliation, the burden shifts back to the employer to show that there was a legitimate, non-retaliatory reason for its actions. If the employer meets its burden, the burden shifts back to the plaintiff to show that there is sufficient potential proof for a reasonable jury to find the proffered reason merely a pretext for impermissible retaliation. <u>Rojas v. Roman Catholic Diocese of Rochester</u>, 660 F.3d 98, 107 (2d. Cir. 2011).

Applying the aforementioned legal standards to plaintiff's case, it is clear that she can establish a prima facie case of retaliation when she was fired within a month after she complained to her employer, defendant Gordon Drucker about the hostile work environment created by defendant McFadden.


### A.    Plaintiff engaged in a protected activity

It is indisputable that plaintiff engaged in a protected activity. An employer may not retaliate against an employee, "because he has opposed any practice made an unlawful employment practice by this subchapter or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. Section 2000e 3(a). As courts have consistently recognized, the express language of Section 704(a)'s participation clause is expansive and seemingly contains no limitations. <u>Deravin v. Kerik</u>, 335 F.3d 195, 203 (2d. Cir. 2003). As the other circuits have stated, "The words 'participate in any manner' express Congress' intent to confer 'exceptionally broad protection' upon employees

covered by Title VII." <u>Clover v. Total Sys. Servs., Inc.</u>, 176 F.3d 1346, 1353 (11th Cir. 1999); <u>Glover v. South Carolina Law Enforcement Div.</u>, 170 F.3d 411, 414 (4th Cir. 1999). Furthermore, the law protects not only the filing of formal charges of discrimination, but also informal complaints about discrimination to management. <u>Lytle v. JP Morgan Chase</u>, 2012 U.S. Dist. Lexis 15599 at 99 (2d. Cir. 2012). So long as plaintiff complains to his employer about conduct which he reasonably believes is unlawful, it is protected activity. <u>Milne v. Navigant Consulting</u>, 2010 U.S. Dist. Lexis 115650 at 6 (S.D.N.Y. 2007).

In <u>Lytle</u>, the plaintiff complained to his managers about comments he believed were racially motivated. <u>Lytle</u>, at 99. The Second Circuit held this is indisputably protected activity under Title VII. <u>Id</u>. The present case presents virtually identical protected activity. Plaintiff complained to her manager, defendant Drucker about the hostile work environment created by defendant McFadden's use of the n-word and her repeated allegations that plaintiff and her husband were stealing while working and McFadden's false reports that plaintiff was not cleaning properly. It is clear that plaintiff engaged in a protected activity.

**B.    Plaintiff's employers were aware of the protected activity**

Plaintiff's employers, specifically defendants McFadden and Drucker were aware of plaintiff's complaints about racial discrimination and a hostile work environment. Defendant Drucker testified in his deposition that he was aware of the complaints made by the plaintiff and Donald Roberts regarding the use of racial epithets. (Drucker Depo pg. 14, lines 2-10. It is clear that defendant Drucker was aware that plaintiff was complaining about the use of a racial epithet in the workplace. Further, plaintiff filed a

formal charge of discrimination with the New York State Division of Human Rights
which the defendants were also aware of.

### C.    Plaintiff suffered an adverse employment action.

Plaintiff suffered an adverse employment action when she was fired less than a
month after complaining about racial discrimination and a hostile work environment.
Plaintiff was terminated on October 20, 2009, the same day she advised defendant
Drucker that she was in an automobile accident on October 19, 2009 and could not come
to work that day. (Affidavit of Veronica Roberts ¶¶74-75).

### D.    Plaintiff's Termination was causally related to her protected complaints.

A plaintiff need not demonstrate that a retaliatory motive was the sole cause of his
termination he need only prove that retaliation was a "substantial" or "motivating" factor
behind the termination. Raniola v. Bratton, 243 F.3d 610, 625 (2d Cir. 2001). A plaintiff
may establish that retaliation was a motivating factor behind an adverse employment
action either; "(1) indirectly, by showing that the protected activity was followed closely
by discriminatory treatment, or through other circumstantial evidence such as disparate
treatment of fellow employees who engaged in similar conduct; or (2) directly through
evidence of retaliatory animus directed against the plaintiff by defendant.  Gordon v.
New York City Bd. Of Educ., 232 F.3d 111, 117 (2d. Cir. 2000).  If the employer then
sets forth evidence showing a legitimate non discriminatory reason for the adverse
employment action, the plaintiff must be given an opportunity to prove by a
preponderance of the evidence that the reasons given were just pretext. Reeves v.
Sanderson Plumbing Products, 530 U.S. 133, 143-144 (2000); Holcomb v. Iona College,
521 F.3d 130, 142 (2d. Cir. 2008).

- 11 -

The plaintiff needs only to prove that the adverse employment action was party motivated by pretextual reasons. <u>Holcomb</u>, 521 F.3d at 142. In <u>Holcomb</u>, the plaintiff, a white male was fired from his position as Associate Head Coach of the men's basketball team at Iona College after working in that position for nine (9) years. <u>Id</u>. at 132. Plaintiff worked along side two other associate coaches, Tony Chilies, who is African American and Rob O'Driscoll, who was the most junior of the three and white. <u>Id</u>. During plaintiff's tenure, he married an African-American woman. <u>Id</u>. Holcomb attributed the firing to Mr. Petricionne, the Vice President of the College and Mr. Brenna, the Director of Athletics. <u>Id</u>. Mr. Petricionne had made racial comments including the word, "niggers." <u>Id</u>. at 134. Holcomb set forth evidence that Mr. Brennan tried to limit the number of African-American people at alumni and fundraiser events. <u>Id</u>. at 133.

The men's basketball team suffered a few years of poor performance, which lead the Board of Trustees to reevaluate the men's basketball team staff. <u>Id</u>. Eventually, Holcomb and Tony Chiles were asked to resign. <u>Id</u>. at 136. The head coach was not fired due to the financial implications it would have on breaching his contract. <u>Id</u>. The defendant stated they retained the white coach, Mr. O'Driscoll and fired Chiles and Holcomb because O'Driscoll worked well with other departments and that the school wanted to keep one of the assistant coaches. <u>Id</u>. Holcomb was able to defeat summary judgment by demonstrating pretext in the reasons for his termination. The court held that the plaintiff set forth significant evidence by way of the racial comments made by Mr. Petricionne, and the attempts by Mr. Brennan to limit the number of African American people at alumni events because a reasonable jury could find that either of the two men could have possessed a racial motive to discriminate against Holcomb. <u>Id</u>. at 142.

- 12 -

**A-228**

In the instant case, the required causal connection exist where plaintiff was fired within a month of complaining about discrimination, defendant ducker's reason for the termination was false and Drucker himself refers to Blacks using offensive terms. First, the incident in which McFadden used the racial epithet occurred in September 2009. The plaintiff and her husband complained to Drucker shortly thereafter in September and plaintiff was fired on October 20, 2009, less than a month after plaintiff's complaints.

Second, Drucker claimed he terminated plaintiff for two (2) nondiscriminatory reasons, one he wanted to "start fresh" with a new company and new employees so that he "could eliminate any cleaning issues that I had before." (Drucker depo. pg. 48, lines 10-24). However, Mr. Drucker did not in fact start fresh as he hired Anthony Gibbons, the team leader of the previous cleaning crew. (Drucker Depo. at pgs. 32, lines 20-25).

Prior to the outsourcing of cleaning, the only cleaners were plaintiff,  plaintiff's husband Donald Robert. Eileen McFadden, her husband Michael McFadden and Anthony Gibbons at the time plaintiff was fired. (Drucker Depo. pg. 35, lines 1-10).  Drucker outsourced the cleaning of the building the day after plaintiff's accident.to Anthony Gibbons (Drucker Depo. pg. 37, lines 1-6). Mrs. McFadden was one of the cleaners as well and she continued to work as a cleaner in the building after the alleged outsourcing. (Drucker Depo. pg. 49, lines 14-24).

Drucker claims he outsourced the cleaning because he thought he could get a better product. (Drucker Depo. pg. 36, lines 20-25). However, this claim is suspect where before the outsourcing the only cleaners were plaintiff, her husband, Anthony Gibbons. Eileen McFadden and her husband Michael McFadden.  After plaintiff was fired, the same people cleaned the building except plaintiff and her husband Donald Roberts.

- 13 -

Further, it is unlikely that Drucker would get a better product were the very same people who cleaned the building before were cleaning the building after the outsourcing.

Drucker also testified at deposition that he did not receive any complaints about plaintiff's cleaning from tenants. (Drucker Depo. pg. 56, lines 1-12). In fact, the only complaints about plaintiff came from defendant Eileen McFadden (Drucker Depo. pg. 56, lines 17-25) who plaintiff believes harbors racial animus against Blacks. Plaintiff showed Drucker an instance when Michael McFadden had not dusted, mopped or vacuumed, but he did nothing other than state he would talk to Eileen McFadden. (Donald Roberts Deposition pg. 58 lines 12-21).

The day after Mrs. Roberts was involved in a motor vehicle accident on October 19, 2012, Drucker fired her. He did not wait until plaintiff could get an update on her medical condition and determine how long she would be out of work. Plaintiff anticipated returning to work after a day or two. She was just shaken up after the accident and needed the day to rest and asses her injuries. Drucker stated he fired plaintiff because she was involved in a motor vehicle accident and could no longer work. Drucker depo pg. 30, lines 12-25. Plaintiff however, was only disabled for a period of time as Mr. Drucker admitted in his deposition testimony. Drucker depo pg. 32, lines 28-31.

Furthermore, Mr. Drucker referred to plaintiff and her husband as "colored" in his response to plaintiff's complaint filed with the New York State Division of Human Rights. Drucker Depo pg. 63, lines 18-25). Mr. Drucker's use of the term "colored" demonstrates his bias towards people of African American descent and any reasonable jury could infer that plaintiff was terminated for the underlying animosity toward African

Americans. While age would not make it any better, defendant Drucker appears to be a relatively young man under age sixty.

Defendant McFadden oversaw the cleaning operations at the building. (Drucker Depo. pg. 33, lines 13-25). Ms. McFadden communicated to Drucker her complaints about cleaning, but the complaints were not attributed to any particular cleaner. (Drucker Depo. pg. 34, lines 17-24).

The present case demonstrates a factually similar situation to Holcomb as the plaintiff in Holcomb presented evidence showing underlying bias towards persons of African American descent and this was sufficient to defeat summary judgment as it created a genuine issue of material fact.

## POINT III

### GGG CONSTRUCTION IS LIABLE FOR THE DISCRIMINATORY REMARKS MADE BY EILEEN MCFADDEN

Because Eileen McFadden was plaintiff's supervisor, GGG Construction LLC is liable for the discriminatory actions of Eileen McFadden. Defendant employers are liable for the discriminatory actions of their employees if those actions are taken by a supervisor and it results in a tangible employment action against the plaintiff. Burlington Industries v. Ellerth, 524 U.S. 742, 761 (1998). Even if there is no tangible employment action, an employer can still be held liable unless it successfully establishes as an affirmative defense that it (a) exercised reasonable care to prevent and correct promptly any harassing behavior, and (b) the plaintiff employee unreasonably failed to take advantage of any preventative or corrective measures provided by the employer or to avoid harm otherwise. Mack v. Otis Elevator Company, 326 F.3d 116, 125 (2d. Cir.

2003); Langford v. International Union of Operating Engineers, 765 F.Supp. 2d 486, 500 (S.D.N.Y 2011).

### A.    Defendant Eileen McFadden was plaintiff's supervisor.

Defendant Eileen McFadden was plaintiff's supervisor during her tenure at GGG Construction, LLC. The starting point for analyzing employer liability under Title VII is whether the person who created the hostile work environment is properly characterized as a supervisor. Mack, 326 F.3d at 123. In Mack, the supervisor was the mechanic in charge at the site where plaintiff worked. The mechanic in charge according to the employee handbook of the defendant enabled the mechanic in charge to assign and schedule work and direct the work force. Id. at 120. The Second Circuit found that the supervisor had authority over plaintiff and the authority granted to the supervisor allowed him to impose a hostile work environment on plaintiff. Id. at 125. The Court further held that it was undisputed that that the supervisor's authority over plaintiff was bestowed upon him by Otis defendant and therefore could be held vicariously liable for the creation of a hostile work environment by plaintiff's supervisor. Id.

The present case presents similar authority by defendant McFadden over plaintiff. According to defendant McFadden, her job title is that she "oversee[s] the cleaning." Deposition Testimony of Eileen McFadden, pg. 5, lines 12-14. She also testified that she "field[s] tenant requests and complaints." Id. Furthermore, McFadden was asked about her title, she stated, "Well, yes, I oversaw the cleaning. I don't know if you would call it supervisor. If you want to call it supervisor, okay." Id. at page 52, lines 11-16. As evidenced by pages 76-79 of defendant McFadden's deposition testimony, she also managed the cleaning supplies which the plaintiff and the other cleaners used. These

- 16 -

**A-232**

facts make it clear that defendant Eileen McFadden was plaintiff's supervisor and that she oversaw the work of the plaintiff and the other cleaners, thereby imposing liability on defendant GGG Construction, LLC.

> **B.    Defendant GGG Construction did not exercise reasonable care to prevent and correct harassing behavior.**

Defendants GGG Construction LLC and Gordon Drucker are liable for the discriminatory acts of defendant Eileen McFadden because they did not exercise reasonable care to prevent and correct any harassing behavior. An employer who does not have a harassment policy does not provide for a reasonable avenue for complaint. Abdullah v. Panko Elec. & Maint., Inc., 2011 U.S. Dist. Lexis 29663 at 44 (citing Brabson v. Friendship House of W. N.Y., 46 F. Appendix 14, 17-18 (2d.Cir. 2002).

As defendant Drucker testified in his deposition, GGG Construction did not have any written manuals or employee handbooks providing a written policy against harassment at the time plaintiff endured the hostile work environment. (Drucker Depo pg. 20, lines 19-25.

Furthermore, defendant Drucker failed to correct the harassing behavior once the plaintiff and her husband complained to him. If a plaintiff is not properly reprimanded and the harassment continues, the defendant cannot prove it took reasonable steps to correct the behavior. Brabson, 46 F. Appendix at 17. Defendant Drucker did not immediately respond to the plaintiff's complaint about the hostile work environment or the complaints that other employees reported to him. As plaintiff testified, "Gordon [Drucker] never called us back, and we kept calling Gordon and calling Gordon and calling Gordon, and we got nothing, got nowhere." (Deposition of Veronica Roberts, pg. 53, lines 19-25).

Furthermore, in response to plaintiff's complaints of being falsely accused of stealing supplies and being prevented from doing her job, defendant Drucker replied, "That's just Eileen." (Veronica Roberts Depo. pgs. 153-54). The length of time it took plaintiff and her husband to speak with defendant Drucker coupled with the lack of reprimand taken against defendant McFadden is clear evidence that the defendant did not take sufficient steps to remedy the hostile work environment. Further, Drucker's partner told plaintiff's husband that this was not the first time McFadden had said something "in that neck of the woods" and he did not know why Drucker "kept her around."

## POINT IV

### PLAINTIFF HAS ESTABLISHED A PRIMA FACIE CASE OF DISCRIMINATION UNDER SECTION 1981

**A.      Plaintiff has set forth a prima facie claim of hostile work environment.**

Section 1981 provides a cause of action for race-based employment discrimination based on a hostile work environment. Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 69 (2d. Cir. 2000). As under Title VII, "a hostile work environment is shown when the incidents of harassment occur either in concert or with a regularity that can reasonably be termed pervasive." Lopez v. S.B. Thomas, Inc., 831 F.2d 1184, 1189 (2d. Cir. 1987). The same standards are used to analyze Section 1981 employment discrimination claims as Title VII claims. Whidbee, 223 F.3d at 69. For the reasons set forth above, plaintiff has established a hostile work environment under Section 1981.

- 18 -

**A-234**

**B.      The number of employees is irrelevant for 1981 claims**

A Section 1981 claim can prevail regardless of the number of employees. <u>Lauture</u> <u>v. IBM</u>, 216 F.3d 258, 264 (2d. Cir. 2000). Therefore, the plaintiff has a valid cause of action versus GGG Construction LLC even if the defendant can prove it employed less than fifteen (15) employees.

**POINT V**

**PLAINTIFF HAS ESTABLISHED A PRIMA FACIE CASE OF HOSTILE WORK ENVIRONMENT AND RETALIATION UNDER NEW YORK STATE LAW**

New York courts require the same standard of proof for claims brought under the NYHRL as for those brought under Title VII, [and the Court] analyze[s] these claims in tandem. <u>Leopold v. Baccarat</u>, 174 F.3d 261, 264 n.1 (2d Cir. 1999); *see also* <u>Drummond</u> <u>v. IPC Int'l, Inc.</u>, 400 F. Supp. 2d 521, 535-36 (E.D.N.Y. 2005) ("Discrimination and retaliation claims under the NYSHRL are analyzed identically to claims under . . . Title VII and the outcome of an employment discrimination claim made pursuant to the NYSHRL is the same as it is under . . . Title VII."). For the reasons set forth above plaintiff has established a prima facie claim of hostile work environment and retaliation resulting therefrom under New York law.

**CONCLUSION**

For the foregoing reasons, the plaintiff respectfully requests that the Court deny the defendants' motion for summary judgment in its entirety and grant plaintiff such other and further relief as the Court deems just and proper.

Dated: June 27, 2012

                                        BROWN & HUTCHINSON
                                        /s/ Michael Cobbs
                                        Michael Cobbs, Esq., *Of Counsel*

- 19 -

Attorneys for Plaintiff
925 Crossroads Building
Two State Street
Rochester, New York 14614
Phone (585) 454-5050
Facsimile (585) 454-5066
mcobbs@brownhutchinson.com

**A-236**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

VERONICA ALBERT-ROBERTS,

                **Plaintiff,**

v.

GGG CONSTRUCTION, LLC,
GORDON DRUCKER, and
EILEEN MCFADDEN,

           **Defendants.**

**DEFENDANT'S REPLY TO
PLAINTIFF'S MEMORANDUM
IN OPPOSITION TO SUMMARY
JUDGMENT**

**CASE NO. 10-CV-6636T**

Scott M. Green, being duly sworn deposes and says:

    1.    I am the attorney for the Defendants, GGG Construction, LLC, Gordon Drucker, and Eileen McFadden.

    2.    I make this Affirmation in reply to the Plaintiff's Memorandum of Law and Affidavit in opposition to the Defendant's motion for summary judgment filed on June 28, 2012.

    3.    Plaintiff sued the Defendants for employment discrimination due to race under Title VII of the Civil Rights Act of 1964, Title 42, United States Code, Section 1981 and New York State Human Rights Law.

    4.    The Plaintiff appeared to sue the Defendants under the American with Disabilities Act of 1990. However, the Plaintiff's response in opposition to this motion seems to abandon that cause of action.

    5.    Plaintiff's Affidavit in opposition to Defendants' Motion for Summary Judgment contains numerous hearsay statements, conclusory statements or misstatements of fact. Comments attributed to tenants about Plaintiff's work product (see Plaintiff's Affidavit, paragraph "10") Mr. McFadden's work product (paragraph "26"), talk around the building (paragraph "48"), Defendant,

1

McFadden's comments to tenants (paragraph "60"), Mr. Drucker's use of offensive slurs (paragraph "63"), comments by "Gary" (paragraph "68"), Mr. Drucker being "ok" with Blacks as long as they didn't complaint about racial discrimination (paragraph "74") are all examples of inadmissible hearsay or conclusory statements.

6.      Plaintiff's conclusory claim in paragraph "80" that Defendant McFadden and Michael McFadden continued to clean the building is false. As testified to by Defendant McFadden, she did administrative work for Defendant, GGG and oversaw the cleaning work (see original motion Exhibit "J", page 5). Mr. McFadden, the other nighttime cleaner, was terminated at the time Plaintiff was terminated (Exhibit "I", pages 46 – 47).

7.      Plaintiff's conclusory claim in paragraph "77" that Defendant GGG fired her for filing a discrimination charge with New York State is false. The Plaintiff did not file her complaint until October 20, 2009, the day she was terminated (see Exhibit "A"). Defendant Drucker did not become aware of a discrimination complaint until after Plaintiff's termination (see Exhibit "G", paragraph "19").

8.      Plaintiff's claim that she intended to return to work a day or two after her car accident (paragraphs "83 – 86") is false. Plaintiff called in after the accident to say she was injured and could not work. Plaintiff did not seek medical attention until five days after the accident (see Exhibit "H", page 68). Plaintiff told Mr. Drucker that her doctor suggested that she remain out of work for two weeks (Exhibit "H", page 72). This is confirmed by Mr. Drucker's Affidavit (Exhibit "G", paragraph "13").

9.      As to the Title VII claims, Plaintiff has failed to allege facts to suggest that the Defendant, GGG Construction, was an "employer" under the statute. In fact, Plaintiff's Affidavit confirms her inability to meet this element of the cause of action. Plaintiff alleges that the cleaning

2

**A-238**

crew consisted of herself and three others. Even though Plaintiff mistakenly named Defendant McFadden as a cleaner, (Defendant acknowledges she is an employee of GGG), she cannot overcome Defendant's proof that it employed less than 15 people.

10.    Likewise, Plaintiff failed to show how individual Defendants Gordon Drucker and Eileen McFadden can be sued under Title VII.

11.    Based upon the foregoing, Plaintiff's Title VII claims against the Defendants should be dismissed.

12.    Even if the Court were to believe that the Defendant GGG was an employer and that individual Defendants could be liable under Title VII, the Plaintiff still has not established a *prima facie* case of a hostile work environment.

13.    Plaintiff offers no proof that Defendants engaged in conduct severe enough or pervasive enough to create a hostile work environment. Plaintiff admits that the "harassment" she claimed was directed toward her did not affect her job performance see (Exhibit "H", page 34).

14.    Plaintiff offered up a few incidents involving statements made to her husband, Donald Roberts. Mr. Roberts testified that he brought his own Human Rights complaint against GGG as a tenant of the Executive Office Building (see Exhibit "K", page 16). Mr. Roberts settled his complaint with GGG on February 25, 2010 (Exhibit "K", pages 17 – 18). The settlement resolved all potential claims between Mr. Roberts and GGG. Therefore, this Court should not consider incidents involving non-employee Donald Roberts as evidence of discrimination towards the Plaintiff.

15.    In her Memorandum of Law, Point I, Plaintiff contends that the Court should examine the hostile work environment through the eyes of the targeted person. The Plaintiff cites <u>Richardson v. New York State Department of Correctional Service</u>, 180 F.3d 426, 436 (2d Cir. 1999) for the above proposition. This contention is misplaced.

3

16.    <u>Richardson</u>, citing <u>Harris v. Forklift Systems</u>, 510 U.S. 17, 21 (1991), actually stands for the proposition that the work environment must be objectively hostile. The allegations must "be evaluated to determine whether a reasonable person who is the target of discrimination would find the working conditions so severe or pervasive as to alter the terms and conditions of employment for the worse." <u>Id</u>. Using that standard, the Plaintiff fails to state a claim.

17.    Plaintiff contends that the single use of the word "nigger" creates a question of fact for a hostile work environment. Plaintiff cited the unreported case of <u>LaGrand v. Descresente Distributing Co., Inc.</u>, 370 Fed. Appx. 206, 208 (2d Cir. 2010) in support of that proposition. Such a contention is misleading.

18.    The quote from <u>LaGrand</u> used by the Plaintiff to support her contention is incomplete and out of context. <u>LaGrand</u> quoted <u>Rodgers v. Western-Southern Life Ins. Co.</u>, 12 F.3d 668, 675 (7th Cir. 1993). The plaintiff forgot to include the phrase, "in the presence of his subordinates". Clearly, the facts of this case involve an allegation that plaintiff's immediate supervisor made a racial epithet outside of the presence of the plaintiff. Further, the facts in <u>Rodgers</u> involved more than one allegation of the use of racial epithets.

19.    Defendants contend that <u>Harris v. Forklift Systems</u>, 510 U.S. 17 (1993), is more applicable to this case than <u>LaGrand</u>. In <u>Harris</u>, the plaintiff was subjected to unwanted sexual innuendos and gender insults. The Supreme Court, in rejecting plaintiff's claim of sexual employment discrimination, stated, "mere utterance of an . . . epithet which engenders offensive feelings in a employee . . . does not sufficiently affect the conditions of employment to implicate Title VII." <u>Harris</u>, at page 21.

4

**A-240**

20.     It should be noted that the managing partner, Defendant, Drucker, did reprimand the immediate supervisor, Defendant McFadden, after this incident.   Plaintiff simply didn't like the severity of the reprimand.

21.     Plaintiff's reliance on <u>Schawpp v. Town of Avon</u>, 118 F.3d 106, 111 (2d Cir. 1997) is also misplaced.   In <u>Schwapp</u>, the plaintiff alleged four incidents of a racially hostile work environment made in his presence and eight other incidents made outside his presence.   While it is true that a racial epithet need not be directed at a plaintiff, such comments only "contribute" to the hostile work environment.   <u>Id</u>.   "For racist comments, slurs and jokes to constitute a hostile work environment, there must be 'more than a few isolated incidents of racial enmity.'"   <u>Id</u>. at 110.

22.     In opposition to Plaintiff's claim for a racially charged hostile work environment is her own statement to the New York State Human Rights Commission (see Exhibit "H", page 56).   Plaintiff wrote that Defendant McFadden's motivation to bother her was due to her desire to show her importance to her employer, rather than based upon racial discrimination.

23.     As to retaliation, Plaintiff does not and cannot refute Defendants' proof that GGG intended to outsource its cleaning service long before the racial epithet incident.   Mr. Drucker testified that he obtained three quotes for outsourcing the cleaning services months before terminating the Plaintiff.   The Plaintiff received the quotes from cleaning services through discovery.   One of the quotes came from Anthony Gibbons.   Mr. Drucker also testified that he planned to outsource the cleaning services by the New Year.

24.     Plaintiff's injury prior to the New Year and her inability to tell Mr. Drucker when she could return to work moved up the timetable to outsource the cleaning services.

25.     Based upon the above, the Plaintiff fails to show that her termination was pretextual.   Therefore, her claim for retaliation must fail.

5

26.    For the reason stated in the original motion, Plaintiff fails to establish a cause of action for either Section 1981 discrimination or a state cause of action.

**WHEREFORE**, it is respectfully requested that this Court dismiss the Plaintiff's Complaint in its entirety pursuant to Rule 56(b) of the Federal Rules of Civil Procedure and Rule 56 of the Local Rules, together with the costs, expenses and legal fees and such other and further relief that this Court deems necessary and proper.

Dated:  July 5, 2012
       Rochester, New York

                                  s/**SCOTT M. GREEN, ESQ.**
                                  *Attorney for the Defendants,*
                                    *GGG Construction, LLC; Gordon*
                                    *Drucker; and Eileen McFadden*
                                  2590 Brighton Henrietta TL Road
                                  Rochester, New York 14623
                                  Tel.  (585) 546-4419
                                  Fax.  (585) 232-1160

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

VERONICA ALBERT-ROBERTS

                        Plaintiff,                    10-CV-6636

          v.                                   **DECISION AND ORDER**

GGG CONSTRUCTION, LLC,
GORDON DRUCKER, AND
EILEEN MCFADDEN,

                    Defendants.

## INTRODUCTION

Plaintiff, Veronica Albert-Roberts ("Plaintiff"), brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), 42 U.S.C. § 1981, the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12112 *et seq.*, and the New York State Human Rights Law, N.Y. Exec. Law §§ 290 *et seq.* ("NYSHRL"), alleging discrimination in the form of a hostile work environment and retaliation on the basis of her race and disability, against her former employer, GGG Construction, LLC ("GGG"), and two individuals, Gordon Drucker ("Drucker") and Eileen McFadden ("McFadden") (collectively, "Defendants"). (Docket No. 1.) Defendants now move for summary judgment, contending that Plaintiff has not established a prima facie case of a hostile work environment or a claim for retaliation and that they are entitled to judgment as a matter of law. Plaintiff opposes the motion, arguing that there are material issues of fact for trial. For the

reasons set forth herein, the Court grants Defendants' motion for summary judgment. Plaintiff's complaint is dismissed with prejudice.

**BACKGROUND**

Local Rule of Civil Procedure 56 (a)(1) requires that a party moving for summary judgment include with its motion a "separate, short, and concise statement...of the material facts as to which the moving party contends there is no genuine issue to be tried." See Local Rule 56(a)(1). "When a party has moved for summary judgment [] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." Glazer v. Formica Corp., 964 F.2d 149, 154 (2d Cir. 1992). Pursuant to Local Rule 56 (a)(2), the opposing party must submit a separate statement which "shall include a response to each numbered paragraph in the moving party's statement...and, if necessary, additional paragraphs containing a short and concise statement of additional material facts as to which it is contended there exists a genuine issue to be tried." Plaintiff has not responded to Defendants' Statement of Facts (Docket No. 28-1), but has filed her own affidavit and cites to the exhibits submitted by the Defendants in connection with this motion. In light of Plaintiff's failure to properly controvert Defendant's Statement of Facts according to the

Page -2-

Local Rules, this Court will deem those factual assertions admitted to the extent they are supported by the record evidence. Accordingly, the following facts are taken from the Defendants' submission pursuant to Local Rule 56 and the Court's review of the entire record, and are viewed in the light most favorable to the Plaintiff, the non-moving party.

Plaintiff was employed by GGG as a part-time, nighttime office cleaner in a building owned and operated by GGG, the Executive Office Building, from November 2008 through October 20, 2009. Plaintiff and her husband, Donald Roberts, also leased space in the Executive Office Building for their store, Roberts Home Décor. During the relevant time period, GGG, an LLC, consisted of two members, Gordon Drucker and Gary Marcus, and it employed a full-time maintenance worker, a full-time office manager (Eileen McFadden), and three part-time office cleaners - Plaintiff, Michael McFadden (Eileen McFadden's husband) and Anthony Gibbons. Gibbons and the Plaintiff are black and the McFaddens are white.

Eileen McFadden oversees the cleaning work and does administrative work for GGG. Gibbons was Plaintiff's immediate supervisor. Plaintiff did not work at the same time as Eileen McFadden and she rarely saw her at work. During the time that Plaintiff was employed, Eileen McFadden complained to Drucker about the quality of the cleaning, but she did not specifically attribute the problems to the Plaintiff or any other cleaner individually.

Plaintiff alleges that Eileen McFadden criticized her work, but she does not describe any particular situation in which her work was criticized more frequently than any other cleaner.

At some point during Plaintiff's employment, Eileen McFadden had a discussion with Plaintiff's husband regarding the overuse of trash bags. McFadden stated, "either the bags have been stolen or they're using too many bags." Plaintiff and her husband interpreted this statement as an accusation that Plaintiff was stealing trash bags. Plaintiff's husband admits that McFadden did not actually accuse Plaintiff of stealing the bags and that she was speaking of the cleaning crew as a whole when she made this statement. The bags were moved for a period of time to prevent overuse, but they were later returned to their original location. In the narrative attached to her complaint to the New York State Division of Human Rights, Plaintiff stated that she confronted Eileen McFadden about the perceived accusation and Eileen stated "I am not saying you are stealing bags; I am saying that there are too many bags being used." One of Eileen McFadden's duties is to control cleaning inventory.

In early September 2009, Eileen McFadden confronted Plaintiff's husband at the Executive Office Building when Plaintiff was not at work regarding Plaintiff's statement to her co-worker that she would not be coming to work on labor day. Plaintiff's husband confirmed that she would not be coming in on labor day.

McFadden stated that Plaintiff needed to "follow the chain of command" and ask Drucker for the time off. The altercation escalated when McFadden learned that a garbage dumpster was left open the previous night. McFadden was angry, believing that Plaintiff and her husband left the dumpster open, and she stormed off and said something like "You fucking niggers...you all just have to do the job you've been fucking paid for."

McFadden denied using the word "nigger." According to the record, McFadden had not used racial epithets at the workplace prior to this occasion towards the Plaintiff, her husband, or other employees or tenants; and she did not use any racial epithet after this occasion.

Plaintiff and her husband complained to Drucker and Gary Marcus regarding this incident. Plaintiff contends that Drucker took a long time to respond to their complaint, but, at some point, he held a meeting at which he warned McFadden that she would be fired if she ever used language like this again. Plaintiff could not recall whether Drucker specifically threatened to fire McFadden, but both Drucker and McFadden testified to what took place at the meeting.

Drucker testified that during the summer prior to this incident he had been seeking quotes to outsource the cleaning services to a private company. Plaintiff, in the narrative attached to her complaint to the New York State Division of Human

Rights, stated that she knew that Drucker was planning to outsource
the cleaning and that potential bidders had visited the Executive
Office Building.  On October 20, 2009, Plaintiff informed Drucker
that she had been in a car accident and could not work that day.
Drucker then decided that the cleaning should be outsourced
immediately because they were shorthanded.  Accordingly, the next
day, Drucker engaged AG Cleaners to clean the Executive Office
Building. Plaintiff and Michael McFadden (Eileen McFadden's husband
and a white employee) were fired as cleaners.  Anthony Gibbons, the
principal at AG Cleaners was instructed to hire a new staff.
Eileen McFadden remained in her position where she continued to
oversee the cleaning, perform administrative work and handle
complaints from tenants.

### DISCUSSION

Rule 56(c) of the Federal Rules of Civil Procedure provides
that summary judgment shall be rendered "if the movant shows that
there is no genuine dispute as to any material fact and the movant
is entitled to judgment as a matter of law."  When considering a
motion for summary judgment, all genuinely disputed facts must be
resolved in favor of the party against whom summary judgment is
sought. See Scott v. Harris, 550 U.S. 372, 379; 127 S.Ct. 1769,
1776 (2007). If, after considering the evidence in the light most
favorable to the nonmoving party, the court finds that no rational
jury could find in favor of that party, a grant of summary judgment

is appropriate. See Scott, 550 U.S. at 379; 127 S.Ct. at 1776 (citing Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-587).

The law is well established that "conclusory statements, conjecture, or speculation" are insufficient to defeat a motion for summary judgment. See Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996). The nonmovant cannot survive summary judgment simply by proffering "some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), or presenting evidence that "is merely colorable, or is not significantly probative." See Savino v. City of New York, 331 F.3d 63, 71 (2d Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (citation omitted)). Rather, he "must set forth specific facts showing that there is a genuine issue for trial." See Anderson, 477 U.S. at 250 (quoting former Fed.R.Civ.P. 56(e)(2); see also D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998) ("non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of...events is not wholly fanciful.")

A.   ADA Claim

Defendants contend that Plaintiff failed to exhaust her administrative remedies with respect to her ADA claim. Def. Mem. of Law at 6-7. Plaintiff has not responded to this argument and

affirmatively states in her memorandum of law in opposition to the
instant motion that she "seeks redress for discrimination based
upon race, color and retaliation suffered in her capacity as an
African American female employee of the defendant, GGG
Construction, LLC ...." Pl. Mem. of Law at 1. Accordingly, the
Court finds that Plaintiff has abandoned any claims she may once
have had under the ADA, and any such claims are hereby dismissed
with prejudice. See e.g. DiGiovanna v. Beth Isr. Med. Ctr., 651
F.Supp.2d 193, 208 (S.D.N.Y. 2009) (collecting cases for the
proposition that a claim is deemed abandoned for plaintiff's
failure to address it in opposition to defendant's summary judgment
motion).

   B.   Title VII Claims

   Defendants argue that Plaintiff's Title VII claims should also
be dismissed because individuals may not be sued under Title VII,
which applies only to an employer, defined as a "person engaged in
an industry affecting commerce who has fifteen or more employees."
Def. Mem. of Law at 5-6; see 42 U.S.C. §2000e(b); Arculeo v. On-
Site Sales & Marketing, LLC, 425 F.3d 193, 195 (2d Cir. 2005).
Defendant Drucker, a member of GGG, affirms that GGG construction
had fewer than fifteen members and employees during the time that
Plaintiff was employed. Drucker Aff. at ¶8. Plaintiff has not
contested this fact and has not responded to this argument.

Because Plaintiff has not presented evidence to controvert the fact that GGG is not an "employer," as that term is defined in Title VII, her Title VII claims against GGG are dismissed with prejudice. Further, her Title VII claims against the individual defendants, Drucker and McFadden, are also dismissed with prejudice, as "individuals are not subject to liability under Title VII." Patterson v. Cnty. of Oneida, 375 F.3d 206, 221 (2d Cir. 2004).

C.    Hostile Work Environment

A plaintiff alleging a claim for a hostile work environment must establish[1] "[1] that the harassment was sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment, and [2] that a specific basis exists for imputing the objectionable conduct to the employer." Alfano v. Costello, 294 F.3d 365, 373 (2d Cir. 2002). The test to determine whether a plaintiff was the victim of a hostile work environment "has objective and subjective elements: the misconduct shown must be 'severe or pervasive enough to create an objectively hostile or abusive work environment,' and the victim must also subjectively perceive that environment to be abusive." Alfano, 294 F.3d at 374 (quoting Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993)).

---

[1]Plaintiff's claims under Section 1981 and the NYSHRL are analyzed under the standards developed for Title VII cases, and the Court will consider them concurrently. See e.g. Patane v. Clark, 508 F.3d 106 (2d Cir. 2007); Patterson v. Cnty. of Oneida, 375 F.3d 206, 225 (2d Cir. 2004).

The incidents of which a plaintiff complains "must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." Carrero v. New York City Housing Auth., 890 F.2d 569, 578 (2d Cir. 1989). The "[m]ere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee would not affect the conditions of employment to a sufficient degree to violate Title VII." Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986). In order for "comments, slurs, and jokes to constitute a hostile work environment, there must be more than a few isolated incidents of racial enmity. Isolated incidents or episodic conduct will not support a hostile work environment claim." Richardson v. NY State Dep't of Correctional Serv., 180 F.3d 426, 437 (2d Cir. 1999), *abrogated on other grounds*. The Court must look at the totality of the circumstances, including the frequency and severity of the discriminatory conduct, whether such conduct is physically threatening or humiliating, and whether such conduct unreasonably interferes with the plaintiff's work performance. See Harris 510 U.S. at 23.

Plaintiff claims that the single use of the word "nigger" "coupled with the accusations of stealing cleaning supplies" and McFadden's criticism of her cleaning establish a prima facie claim for a hostile work environment. Pl. Mem. of Law at 5; Pl. Aff. at ¶49. First, a review of the record indicates that McFadden did not specifically accuse the Plaintiff of stealing trash bags.

Rather, in a conversation with the Plaintiff's husband, McFadden stated "either the bags have been stolen or they're using too many bags." Donald Roberts Dep. at 38.   The trash bags were moved to avoid overuse, but later moved back to their original location. Id. at 37-45.   Plaintiff's husband testified that McFadden did not accuse the Plaintiff of stealing the bags herself, and that she was referring to the Plaintiff, Michael McFadden and Anthony Gibbons, the whole cleaning crew (black and white individuals), when she made this statement.   Id. at 38-39. Further, in the narrative attached to her complaint to the New York State Division of Human Rights, Plaintiff stated that she confronted Eileen McFadden about the perceived accusation and Eileen stated "I am not saying you are stealing bags; I am saying that there are too many bags being used." Def. Exhibit A.   The Court does not find that the incident with the trash bags supports Plaintiff's claim that she was subjected to a racially hostile work environment.   The comment was not directed at the Plaintiff individually and it was not discriminatory in nature. There is no evidence that conduct of this nature occurred more than once, that Plaintiff was prevented from doing her job or that she felt threatened by this statement. See Cristoforo v. Lake Shore Cent. School Dist., 2011 WL 1082567, *2 (2d Cir. April 2, 2012)("While facially neutral incidents may be considered among the totality of the circumstances in any hostile work environment claim, there must be a circumstantial or other

basis for inferring that incidents [] neutral on their face were in fact discriminatory."(quoting <u>Alfano v. Costello</u>, 294 F.3d 365, 378(2d Cir.2002)); <u>See</u> <u>also</u> <u>Holt v. Roadway Package Systems, Inc.</u>, 506 F.Supp.2d 194, 203 (W.D.N.Y. August 21, 2007).

Further, work criticism, alone, cannot establish a claim for a hostile work environment (<u>see</u> <u>Lucenti v. Potter</u>, 432 F.Supp.2d 347, 363 (S.D.N.Y.2006); and the work criticism of which plaintiff complains is vague, at best.  Plaintiff has not described any specific factual situation in which she was criticized for her work, nor does she describe how this criticism contributed to a discriminatory and hostile work environment which interfered with her ability to do her job.  Rather, when asked whether she was able to continue to do her job despite McFadden's alleged harassment, she stated, "absolutely." Pl. Dep. at 34.  Also, although Plaintiff believes that other employees were not criticized as often as she was, she has not presented any evidence, other than her own speculation, to support this allegation. <u>See</u> <u>Chukwurah v. Stop &</u> <u>Shop Supermaket Co. LLC</u>, 345 Fed. Appx. 492 (2d Cir. 2009)(citing <u>Goenaga v. March of Dimes Birth Defects Found.</u>, 51 F.3d 14, 19 (2d Cir.1995); <u>Meiri v. Dacon</u>, 759 F.2d 989, 998 (2d Cir.1985)). Lastly, Plaintiff admits that "Ms. McFadden communicated to Drucker her complaints about cleaning, but the complaints were not attributed to any particular cleaner." Pl. Mem. of Law at 15; Drucker Dep. at pg. 34.

**A-254**

Plaintiff cites La Grande v. DeCrescente Distributing Co., Inc., 370 Fed. Appx. 206, 210-211 (2d Cir. 2010), in support of her argument that the single use of the word "nigger" may support a claim for a hostile work environment. However, in La Grande, the Second Circuit found that the plaintiff sufficiently alleged a plausible claim to relief at the motion to dismiss stage, where he complained of co-workers making racial comments, he was threatened with termination, among other things, and a manager, on four occasions, physically threatened him and called him a nigger. Id. Here, the record reveals only one instance of the use of the word "nigger" by McFadden, to Plaintiff's husband. The record does not indicate that the comment was made in a physically threatening manner or that McFadden used racial epithets on any other occasion to the Plaintiff, her husband, or any other person. The record also does not indicate that this instance occurred in the presence of McFadden's subordinates. Further, the other incidents of which Plaintiff complains were unrelated to this isolated use of the word "nigger." The trash bag incident was also isolated in nature and facially non-discriminatory, and both the work criticism and the trash bag incident were directed at the entire cleaning crews.

In sum, the Court finds that these circumstances, taken together, do not amount to the type of severe and pervasive conduct that is necessary to establish a prima facie claim for a hostile work environment. The one racial epithet was isolated and was not

uttered in connection with the other instances harassment of which the Plaintiff complains - the trash bag incident and the work criticism.   There is no evidence to suggest that Plaintiff was treated differently in terms of work criticism or the trash bag incident in relation to other white employees such that this Court could infer that this conduct was racially discriminatory. Further, Plaintiff testified that she was not prevented from doing her job based on McFadden's conduct and that it was also very rare that she had contact with McFadden at work. Pl. Dep. at 30, 34. Lastly, in response to Plaintiff's argument that Drucker did not respond to her complaints of discrimination, the record indicates that Drucker had a meeting with the Plaintiff and her husband and Eileen McFadden.  Drucker Dep. at 25.  After discussing the racial epithet incident, Drucker warned McFadden that if he heard of conduct like this in the future, she would be fired.  Id. at 27.

Accordingly, this Court finds that Plaintiff has not established a prima facie case of a hostile work environment and her claims under 42 U.S.C. Section 1981 and the NYSHRL are dismissed with prejudice.

D.    Retaliation

Plaintiff alleges that was terminated one month after complaining to Drucker about McFadden's conduct.[2] Pl. Mem. of Law

_____

[2]Plaintiff also states in her affidavit in opposition to the instant motion that "McFadden retaliated against us by telling tenants and patrons in the building not to come to, or shop at our business." Pl. Aff. at ¶60.  Plaintiff does not cite to anywhere in the record to support her

at 8.   The Court reviews Plaintiff's retaliation claim pursuant to the familiar burden-shifting framework set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). Under this framework, the plaintiff must first establish a prima facie case of retaliation, which requires the plaintiff to establish that: (1) she participated in a protected activity known to the defendant; (2) she suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse action. <u>Patane v. Clark</u>, 508 F.3d 106, 113 (2d Cir. 2007)(citing <u>Feingold v. New York</u>, 366 F.3d 138, 156 (2d Cir. 2004)). Any action that "could well dissuade a reasonable worker from making or supporting a charge of discrimination" could constitute retaliation. <u>Burlington Northern & Santa Fe Ry. v. White</u>, 548 U.S. 53, 67-68 (2006).

Thereafter, the burden shifts to the employer to "articulate a legitimate, nondiscriminatory reason for the adverse employment action, which, if proffered, places the burden on the plaintiff to prove that discrimination was a "substantial reason" for the employment action. <u>See Jute v. Hamilton Sundstrand Corp.</u>, 420 F.3d 166, 173 (2d Cir. 2005). Although the Second Circuit Court of

---

statement and she offers no other admissible evidence that McFadden ever spoke to tenants or patrons about the Plaintiff and her husband. Plaintiff's hearsay statements are insufficient to defeat the Defendants' motion for summary judgment. <u>See</u> Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.").

Appeals has stated that "the burden that must be met by an employment discrimination plaintiff to survive a summary judgment motion at the *prima facie* stage is *de minimis*," <u>Tomka v. Seiler Corp.</u>, 66 F.3d at 1308 (internal citations omitted), it has also noted that "[a] jury cannot infer discrimination from thin air." <u>Norton v. Sams Club</u>, 145 F.3d 114 (2d Cir.), <u>cert.</u> <u>denied</u> 119 S.Ct. 511 (1998).

For the purpose of this motion, the Court will assume that Plaintiff has established a prima facie case of retaliation: she complained in September 2009 of McFadden's conduct and she was fired on October 20, 2009, approximately one month after complaining of the alleged discrimination.

In explaining Plaintiff's termination, Defendant Drucker avers that in the summer of 2009, prior to Plaintiff's complaints, he decided to outsource the cleaning services. Drucker Aff. at ¶ 11. Plaintiff knew that Drucker was seeking to outsource the cleaning services and she knew that potential bidders had visited the Executive Office Building. Def. Exhibit A. Drucker states that he obtained quotes from three cleaning vendors, and decided to hire one of the vendors after Plaintiff advised him that she would be out of work due to injuries from a car accident. Drucker states that he needed to provide cleaning services to the tenants immediately because they were shorthanded. <u>Id.</u> at ¶¶ 11-14. GGG then fired Michael McFadden (a white employee) and the Plaintiff

and engaged AG Cleaning Services to clean the Executive Office Building. Id. at ¶¶ 15-16. Anthony Gibbons, is the principal of AG Cleaning Services, and he stayed on as a cleaner. Id. at ¶¶ 15, 17.

Plaintiff states in her affidavit in support of this motion that Michael and Eileen McFadden continued to clean the building after she was fired. Pl. Aff. at ¶ 80. However, the record reveals that Eileen McFadden is employed in an administrative capacity at GGG and she oversees the cleaning crew, she is not a cleaner. McFadden Dep. at pg. 5. Further, Drucker testified that Michael McFadden was fired at the same time that the Plaintiff was fired. Drucker Dep. at pg. 47. Plaintiff offers nothing more than her own speculative belief that the McFaddens were employed as cleaners after she was terminated, which is insufficient to create a material issue of fact.

In a feeble attempt to rebut Drucker's legitimate, non-discriminatory reason for terminating her and Michael McFadden, Plaintiff states that Drucker referred to her and other African American employees as "colored," in his answer to her complaint to the New York State Division of Human Rights. Accordingly, Plaintiff argues that her termination was a pretext for racial discrimination. However, the Court does not find this evidence sufficient to show that Drucker's legitimate, non-discriminatory reason is a pretext for discimination. See Van Zant v. KLM Royal

Dutch Airlines, 80 F.3d 708 (2d Cir. 1996)("To defeat KLM's motion for summary judgment, Van Zant was obliged to produce not simply "some" evidence, but 'sufficient evidence to support a rational finding that the legitimate, nondiscriminatory reasons proffered by the employer were false, and that more likely than not [discrimination] was the real reason for the discharge.'")(quoting Woroski v. Nashua Corp., 31 F.3d 105, 110 (2d Cir.1994)).

While referring to black people as "colored" may be politically incorrect, it does not, without more, lead to the conclusion (or even the inference) that Plaintiff's termination was the result of racial discrimination. There is no other evidence of discrimination on the part of Drucker that would support this claim. Plaintiff admits that she never heard Drucker utter a racial epithet. Pl. Dep. at 37. Further, Michael McFadden, a white employee and Eileen McFadden's husband, was fired on the same day that the Plaintiff was fired. Lastly, the Court notes that this statement was made after the Plaintiff was terminated, as she did not file her complaint with the New York State Division of Human Rights until October 20, 2009. Def. Exhibit A.

In sum, the Court finds that Plaintiff has not provided evidence of discrimination sufficient to rebut the Defendants' legitimate, non-discriminatory reason for her termination - that they planned, prior to her complaints, to outsource the cleaning and that when she could not work due to an injury, they outsourced

the cleaning so that they would not be shorthanded.  Accordingly,
the Court finds that Plaintiff has not presented evidence of
retaliation such that a reasonable jury could find in her favor and
her retaliation claims are hereby dismissed with prejudice.

<u>**CONCLUSION**</u>

For the reasons discussed herein, this Court grants
Defendants' motion for summary judgment.  Plaintiff's complaint is
hereby dismissed with prejudice.

**ALL OF THE ABOVE IS SO ORDERED.**

<u>  S/ MICHAEL A. TELESCA  </u>
HON. MICHAEL A. TELESCA
United States District Judge

Dated:    Rochester, New York
          August 16, 2012

AO 450 (Rev. 01/09)   Judgment in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Western District of New York

| | | |
|---|---|---|
| VERONICA ALBERT-ROBERTS | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.    10-CV-6636 |
| GGG CONSTRUCTION, LLC, GORDON | ) | |
| DRUCKER and EILEEN MCFADDEN | ) | |
| *Defendant* | ) | |

## JUDGMENT IN A CIVIL ACTION

The court has ordered that *(check one):*

☐ the plaintiff *(name)* _____ recover from the defendant *(name)* _____ the amount of _____ dollars ($ _____ ), which includes prejudgment interest at the rate of _____ %, plus postjudgment interest at the rate of _____ %, along with costs.

☐ the plaintiff recover nothing, the action be dismissed on the merits, and the defendant *(name)* _____ recover costs from the plaintiff *(name)* _____

☒ other:   the complaint is dismissed with prejudice.

This action was *(check one):*

☐ tried by a jury with Judge _____ presiding, and the jury has rendered a verdict.

☐ tried by Judge _____ without a jury and the above decision was reached.

☒ decided by Judge      Michael A. Telesca      on a motion for   summary judgment.

Date:      Aug 17, 2012                          *CLERK OF COURT*

s/Michael J. Roemer

*Signature of Clerk or Deputy Clerk*

**A-262**

**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK**

VERONICA ALBERT-ROBERTS,

Plaintiff,

**NOTICE OF APPEAL**

GGG CONSTRUCTION, LLC,
GORDON DRUCKER, and
EILEEN McFADDEN,

Civil Action No.:
10-CV-6636T

Defendants.

Notice is hereby given that Veronica Albert-Roberts, plaintiff in the above named case, hereby appeals to the United States Court of Appeals for the Second Circuit each and every part of the Decision and Order of U.S. District Judge Michael A. Telesca entered and filed in this action on the 16th day of August, 2012 dismissing the action in favor of defendants.

Dated: August 27, 2012
      Rochester, New York

**BROWN & HUTCHINSON**

By: /s/ Michael Cobbs
**Michael Cobbs, Esq.**
mcobbs@brownhutchinson.com
*Attorneys for Plaintiff*
925 Crossroads Building,
Two State Street
Rochester, New York 14614
Office: (585) 454-5050
Fax: (585) 454-5066

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

VERONICA ALBERT-ROBERTS,

                              Plaintiff,                    **CERTIFICATE OF
                                                               SERVICE**

GGG CONSTRUCTION, LLC,                                     Civil Action No.:
GORDON DRUCKER, and                                        10-CV-6636T
EILEEN McFADDEN,

                              Defendants.

I, Michael Cobbs, an attorney with Brown & Hutchinson, attorneys for the plaintiff

herein, certify that on September 17, 2012  I electronically filed plaintiff's Notice of Appeal in

the above matter using the CM/ECF system which sent notification of filing to:

        **All parties and CM/ECF participants.**

Dated: September 17, 2012             **BROWN & HUTCHINSON**
       Rochester, New York

                                      By: /s/ Michael  Cobbs
                                      **Michael Cobbs, Esq.**
                                      mcobbs@brownhutchinson.com
                                      *Attorneys for Plaintiff*
                                      925 Crossroads Building,
                                      Two State Street
                                      Rochester, New York  14614
                                      Office: (585) 454-5050
                                      Fax: (585) 454-5066

## CERTIFICATE OF SERVICE & CM/ECF FILING
### 12-3755-cv

I hereby certify that I caused the foregoing JOINT APPENDIX (VOLUME 1 and VOLUME 2) to be served on counsel for the Appellees via Electronic Mail generated by the Court's electronic filing system (CM/ECF) with a Notice of Docket Activity pursuant to Local Appellate Rule 25.1 and a hard copy of the foregoing JOINT APPENDIX (VOLUME 1 and VOLUME 2) was mailed to counsel at the address below:

Scott M. Green, Esq.
*Attorney for Defendants-Appellees*
2590 Brighton-Henrietta Town Line
Rochester, New York 14623
(585) 546-4419 (phone)
 (585) 232-1160 (facsimile)
smglbg@aol.com

I certify that an electronic copy was uploaded to the Court's electronic filing system. Six hard copies of the foregoing JOINT APPENDIX (VOLUME 1 and VOLUME 2) were sent to the Clerk's Office by Fed-Ex Overnight Delivery to:

Clerk of Court
United States Court of Appeals, Second Circuit
United States Courthouse
500 Pearl Street, 3rd floor
New York, New York 10007
(212) 857-8500

on this 21st day of May 2013.

_____
Joseph A. Gawlowicz